TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorney
Asset Forfeiture Section
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2686
    Facsimile:  (213) 894-0142
    E-mail: James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>$854,000.00 IN FUNDS ON DEPOSIT IN WELLS FARGO BANK ACCOUNT ENDING IN 9542,<br><br>          Defendant. | Case No. 2:22-CV-2362<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>18 U.S.C. §§ 981(a)(1)(A) and (C), and 984<br><br>[IRS] |

//

//

1

Plaintiff United States of America ("the government") brings this claim against the defendant $854,000.00 In Funds On Deposit In Wells Fargo Bank Account Ending in 9542[1], and alleges as follows:

## JURISDICTION AND VENUE

1. The government brings this *in rem* forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America.

5. The defendant in this action (the "defendant funds") is $854,000.00 In Funds On Deposit In Wells Fargo Bank Account Ending in 9542 ("WFB-9542"). Ineedclosure, Inc. ("Ineedclosure") was the account holder of WFB-9542, and Kairee S. Griffin ("Griffin") is the Registered Agent for Ineedclosure. Griffin is also the listed signor for WFB-9542.

6. The defendant funds were seized on October 15, 2021, pursuant to a federal seizure warrant at Wells Fargo Bank, 1000 W. San Marcos Blvd., San Marcos, CA 92078.

7. The defendant funds are currently in the custody of the Internal Revenue Service ("IRS"), a bureau of the U.S. Department of the Treasury in this District, where they shall remain subject to this Court's jurisdiction during the pendency of this action.

8. The interests of Ineedclosure and Griffin may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

9. The Coronavirus Aid, Relief, and Economic Security Act, also known as

---

[1] Pursuant to Local Rule 5.2-1, only the last four digits of bank account numbers are set forth in this Complaint.

2

the CARES Act, is a federal law enacted around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. The CARES Act provided relief via the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Around April 2020, Congress authorized over $300 billion in additional PPP funding.

<u>Description of the Paycheck Protection Program</u>

10. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized business representative. The PPP loan application requires the business, through its authorized representative, to acknowledge the Program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One such certification requires the applicant, through its authorized representative, to affirm that:

> [t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

11. In addition, the business, through its authorized representative, must state, among other things, the company's number of employees and average monthly payroll expenses, and provide documentation showing the company's payroll expenses. The employee and payroll expense numbers are used to calculate the amount of money the business is eligible to receive under the PPP.

12. In the first instance, the company's PPP loan application is received and processed by a participating financial institution, and then the application is transmitted to the Small Business Administration ("SBA") for further review and assessment of the applicant's eligibility. If a PPP loan application is approved, the participating financial institution funds the PPP loan using the financial institution's own monies.

13. PPP loan proceeds must be used by the business on certain permissible expenses, namely payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least 75% of the PPP loan proceeds on payroll expenses.

Description of the Economic Injury Disaster Loan Program

14. The CARES Act expanded the SBA's long-standing Economic Injury Disaster Loan Program ("EIDL program") which has traditionally provided assistance to businesses located in regions affected by declared disasters. Under the CARES Act expansion, the EIDL program allowed small businesses, nonprofit organizations, and certain U.S. agricultural businesses that suffered substantial economic injury as a result of the COVID-19 pandemic to apply for funding under the COVID-19 EIDL program, which allowed eligible businesses to receive working capital loans of up to $150,000, amortized for up to a 30-year term at a low interest rate, with payments deferred for one year. The amount of each particular loan was determined in part on information provided by the applicant about the business' employees, revenue, and cost of goods. Approval of a COVID-19 EIDL program loan was based on a credit score that was calculated without the usual requirement of a first-year tax return or proof that the business was incapable of obtaining credit elsewhere. A business that applied for a COVID-19 EIDL program loan could also apply for up to a $10,000 advance that would be funded within days of approval in the form of a grant that did not have to be repaid regardless of whether the loan was approved.

15. Like the PPP loan application, each business that applied for a COVID-19 EIDL program loan was required to make certain affirmative certifications regarding eligibility, under penalty of perjury. The application process included an explicit warning that the SBA would rely on the applicant's self-certification of eligibility in awarding any requested advance. COVID-19 EIDL applications were submitted directly

to and processed by the SBA with support from a government contractor.  Once a loan was approved, the SBA would deposit COVID-19 EIDL funds directly to the business bank account that the applicant identified in the EIDL application.  Following SBA EIDL funding approval, a loan applicant could alter the original bank routing and account information provided in its original application, causing approved EIDL funds to be re-routed to a different account recipient.

<u>Ineedclosure and Griffin Received Fraudulently Obtained EIDL Proceeds</u>

16. On or about May 19, 2020, Griffin applied as an "Officer" on Ineedclosure's behalf for a $150,000 loan from the SBA under its EIDL program.  The Ineedclosure's EIDL application (number 3000197395) stated that Griffin was the loan applicant and sole business owner of Ineedclosure.  On or about June 18, 2020, the SBA approved EIDL number 7011077905 for the benefit of Ineedclosure and disbursed $149,900 to WFB-9542.  On or about June 29, 2020, the SBA disbursed an additional $10,000 to WFB-9542.

17. The government's investigation revealed that INEEDCLOSURE's EIDL application contained numerous false and fraudulent representations as follows:

18. On its EIDL application, Ineedclosure fraudulently misrepresented its organization and revenue information to the SBA when it identified itself as a C-Corporation with an inflated gross revenue of $2,950,762 for the 12 months leading up to January 31, 2020.  An IRS investigator search of tax-exempt organizations listed on IRS.gov revealed that Griffin is the principal officer of Ineedclosure, a non-profit organization that actually had gross receipts not greater than $50,000 for the 2019 and 2020 tax years.  The Ineedclosure EIDL application further stated that its Employer Identification Number ("EIN") ends in 0686, which is identical to the EIN on the Form 990 Non-Profit Organization record that Ineedclosure filed with the IRS, demonstrating that the two entities are one and the same, and that Griffin presented false organizational data to obtain the EIDL.

//

19. IRS investigators learned that Ineedclosure was incorporated as a Non-Profit Corporation in North Carolina in 2007. On or about June 3, 2016, Ineedclosure filed a Statement and Designation as a Foreign Corporation with the California Secretary of State, allowing it to transact business in California.

20. On the EIDL application, Ineedclosure fraudulently misrepresented payroll information to the SBA by inflating employee headcounts. Ineedclosure stated in its EIDL application that it employed 38 individuals as of January 31, 2020. However, IRS investigators reviewed State of California Employment Development Department ("EDD") records and learned that Ineedclosure had no employees during the 2018, 2019, and 2020 tax years. IRS investigators' further review of Ineedclosure's financial records showed that between January 8, 2020, and June 18, 2021, Ineedclosure had no payroll expenses drawn from WFB-9542.

21. Ineedclosure applied for the EIDL electronically from the Internet Protocol ("IP") address 99.109.16.92. IRS investigators reviewed AT&T subscriber/IP usage records and learned that the IP address 99.109.16.92 is assigned to Griffin.

<u>Ineedclosure and Griffin Received Fraudulently Obtained PPP Loan Proceeds</u>

22. On or about July 23, 2020, Griffin applied on Ineedclosure's behalf for a PPP loan through Intuit, Inc. ("Inuit"). Ineedclosure's PPP loan application stated that Griffin was the loan applicant and Ineedclosure's sole owner. On or about August 3, 2020, Intuit approved PPP loan number 2094868207 for the benefit of Ineedclosure and disbursed $702,257 to WFB-9542.

23. IRS investigators learned that Ineedclosure, Inc.'s PPP loan application contained numerous false and fraudulent representations as follows:

24. On the PPP loan application, Ineedclosure, Inc. fraudulently misrepresented payroll information by inflating employee headcounts. Ineedclosure, Inc. stated in its PPP loan application that it was located in California and employed 35 individuals from July 1, 2019, to June 30, 2020, for an average monthly payroll costs of $280,903.29 (the SBA EIDL application indicated 38 employees). However, IRS investigators reviewed

EDD records and learned that Ineedclosure had no employees. Further review of bank documents showed that Ineedclosure also had no payroll expenses.

25. In a manner consistent with its prior EIDL fraud scheme, Ineedclosure applied for the PPP loan electronically from the IP address 99.109.16.92. As before, IRS investigators reviewed AT&T subscriber/IP usage records and learned that the IP address 99.109.16.92 is assigned to Griffin.

Griffin and Griffin One Attempted to Receive Fraudulently Obtained PPP Loan Proceeds

26. In a manner consistent with the above-described fraud scheme, on or about July 21, 2020, Griffin submitted another PPP loan application to Intuit, but in the name of an entity named "Griffin One," an alleged information technology and cybersecurity service provider. On the loan application, Griffin stated that he was the loan applicant, and the sole owner of Griffin One, a business purportedly with 75 employees. On or about July 24, 2020, Intuit approved the PPP loan and disbursed $1,471,740 to a U.S. Bank account ending in 8006, held by Griffin One as the sole signatory.

27. IRS investigators reviewed documents received from the EDD and learned that Griffin One has no employees.

28. Due to the fraud risk, U.S. Bank placed the $1,471,740 in fraudulently obtained loan proceeds on hold. Intuit further reviewed the loan application, including email correspondence with Griffin, and confirmed that Griffin electronically signed the suspicious PPP loan application. IRS investigators learned that on May 11, 2021, an Intuit representative contacted Griffin regarding Griffin One's PPP loan application, but Griffin denied having submitted the application. Intuit subsequently cancelled the loan to Griffin One and U.S. Bank returned the loan proceeds to Intuit.

Tracing analysis for WFB-9542

29. On October 30, 2015, Griffin opened WFB-9542, in the name of Ineedclosure. Griffin is the only signatory on WFB-9542.

30. As of June 18, 2020, the balance of WFB-9542 was $130,000, comprised largely of deposits made from Griffin One's U.S. Bank account ending in 8006 ("USB-

8006") occurring between January 31, 2020, and June 17, 2020.  USB-8006 was also the intended recipient of fraudulently obtained PPP loan funds, described above.

31.     On or about June 18, 2020, and June 29, 2020, the SBA electronically transferred fraudulently obtained EIDL proceeds of $149,900.00 and $10,000.00, respectively, into WFB-9542.

32.     On or about August 3, 2020, Intuit electronically transferred PPP loan proceeds of $702,257 into WFB-9542.

33.     As of August 3, 2020, the WFB-9542 account balance was $959,257.00, of which $862,157 is known to have represented fraudulently obtained funds.

34.     Between August 3, 2020, and October 15, 2021, Griffin initiated multiple transactions between WFB-9542, USB-8006, various USAA Bank accounts ending in 3744 ("USAA-3744-savings") and 3752 ("USAA-3752-checking"), and Capitol One NA Bank account 0611 ("COB-0611"), all accounts under his control, and conducted said transactions in a manner common among money launderers seeking to hide the source of illicit proceeds and frustrate investigative tracing efforts.  Prior to October 15, 2021, WFB-9542 maintained an account balance of at least $853,000.00.

## FIRST CLAIM FOR RELIEF

35.     Based on the above, the government alleges that the defendant funds constitute or are derived from proceeds traceable to one of more violations of 18 U.S.C. §§ 1341 (Mail fraud), and 1343 (Wire fraud), both of which are specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B).  The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).  In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject of forfeiture pursuant to 18 U.S.C. § 984.

//
//

## SECOND CLAIM FOR RELIEF

36. Based on the above, the government alleges that the defendant funds were involved in one or more actual or attempted violations of 18 U.S.C. § 1956(a), with the specified unlawful activity being violations of 18 U.S.C. §§ 1342 (mail fraud) and 1343 (wire fraud). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject of forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant funds;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant funds to the United States of America for disposition according to law; and

//
//

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: April 8, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section

　/s/ James E. Dochterman
JAMES E. DOCHTERMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## VERIFICATION

I, Simon Lai, hereby declare that:

1. I am a Special Agent with the Internal Revenue Service-Criminal Investigation.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on ___April 8___, 2022 at ___EL MONTE___, California.

_____
Simon Lai
Special Agent
Internal Revenue Service-Criminal Investigation

11